J-S82006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAIN HUMPERDINCK FIGUEREO | |
| Appellant | No. 282 MDA 2016 |

Appeal from the Judgment of Sentence January 14, 2016
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0001323-2011
CP-40-CR-0001419-2012

BEFORE: OTT, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                **FILED MARCH 20, 2017**

Kain Humperdinck Figuereo appeals from the judgment of sentence entered January 14, 2016, in the Luzerne County Court of Common Pleas. On October 16, 2015, the trial court, sitting without a jury, found Figuereo guilty but mentally ill of one count each of false alarm to an agency of public safety, false reports (reported offense did not occur), simple assault, and criminal mischief (damage to property).[1] The court imposed an aggregate sentence of 17 to 28 months' incarceration. The sole issue on appeal is a challenge to the discretionary aspects of sentencing. After a thorough

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 4905(a), 4906(b)(1), 2701(a)(3), and 3304(a)(5), respectively.

review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The facts and procedural history are summarized as follows. Figuereo was charged at two criminal dockets for two separate incidents. Both cases were tried together on October 16, 2015.[2] With respect to Docket No. CP-40-CR-0001419-2012 ("Docket No. 1419"), we note that on October 22, 2011, the victim, Pamela Bromiley,[3] was at her home, located on Hollywood Boulevard, Hazle Township, Pennsylvania, when she noticed her neighbor, Figuereo, across the street. She observed Figuereo pacing back and forth, and then run down the street after a car that was occupied by Bromiley's son and his girlfriend. At the time, Bromiley was in her driveway and she saw Figuereo turn around and run onto her property. Bromiley got in her own car because she now saw Figuereo wielding a large kitchen knife. She testified:

> [Figuereo] ran up to the side of the car and started pounding on the window of the car. Umm, he was yelling, Get out of the car, get out of the car, along with a lot of other … multiple languages.

---

[2] We have set forth the facts of the two cases in the order they were presented at trial.

We note that the incidents happened approximately four years before the trial. The delay was apparently because Figuereo was in and out of mental health treatment facilities. *See* N.T., 1/14/2016, at 53.

[3] The sentencing transcript spells the victim's last name as "Bromley." *See* N.T., 1/14/2016, at 18. For ease of our analysis, we will use the spelling as found in the trial transcript.

> And … then, he raised his arm, and he had a knife, and was … hitting the window and screaming.

N.T., 10/16/2015, at 13. Bromiley stated she started to back up when Figuereo began stabbing the tires and side of the car. Bromiley's husband then came out of the home and yelled to Figuereo to get off the property. As this point, Bromiley was able to drive her car away down the road where she called 9-1-1. **_See generally id._** at 11-28.

In his defense, Figuereo provided an assortment of reasons for his actions on October 22nd which included: (1) he suffered from hallucinations as a result of inadvertently inhaling bath salts the night before, in which he believed his half-brother's brain was in Bromiley's dog and he wanted to free the dog by cutting the leash with the knife; (2) Bromiley's son approached him first in a threatening manner and made gestures; and (3) he merely wanted to talk to Bromiley about the dog and she accelerated the car and almost ran over his foot so he tried to deflate the tire. **_Id._** at 40-66. Figuereo indicated he was not taking his medications at the time, which would have helped with his mental health. **_Id._** at 66.[4] At the conclusion of the Docket No. 1419 trial, the court found Figuereo guilty but mentally ill of simple assault and criminal mischief.

---

[4] On cross-examination, Figuereo stated that even though he was hallucinating, it had no effect on his memory as to what happened that day. **_Id._** at 77.

Next, with regard to Docket No. CP-40-CR-0001323-2011 ("Docket No. 1323"), we note that on February 25, 2011, Figuereo made several phone calls to the Hazleton police department, claiming a bomb was located in an apartment at 1015 Lincoln Street. *Id.* at 105-106.[5] Police responded to the scene, evacuated the area and searched the apartment as well as an adjacent apartment. No explosives or anything resembling a bomb were found in the area. Figuereo was taken into custody and admitted he lived in the apartment at issue.

Figuereo claimed he again had hallucinated on the day of the incident due to bath salts. He heard about a Libyan revolution on the radio and thought his neighbor had packed a bomb in a container. He also thought his hair conditioner might be a bomb. Lastly, Figuereo stated his brain was damaged due to taking bad medicine for long periods of time. *Id.* at 121-138. At the conclusion of the Docket No. 1323 trial, the court found Figuereo guilty but mentally ill of false alarm and false reports.

On January 14, 2016, the court found a deadly weapon enhancement applied to the matter and sentenced Figuereo to the following: (1) a term of ten to 20 months' incarceration for the simple assault charge; (2) a consecutive term of 90 days' incarceration for the criminal mischief offense; and (3) a consecutive term of four to eight months' imprisonment for the

---

[5] Figuereo identified himself to the dispatcher.

false alarm conviction, followed by three years' probation.[6,7] Figuereo did not file post-sentence motions, but did file this direct appeal.[8,9]

In his sole issue on appeal, Figuereo claims he is entitled to a new sentencing hearing because the trial court abused its discretion by sentencing him in the aggravated range of the sentencing guidelines "without properly considering his mental health issues and other mitigating factors[,] and for relying on factors already set forth in the Guidelines." Figuereo's Brief at 6.

As presented, Figuereo's issue challenges the discretionary aspects of his sentence. *See **Commonwealth v. Lutes***, 793 A.2d 949 (Pa. Super. 2002) (explaining argument that sentence is manifestly excessive challenges discretionary aspects of sentencing). "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to

---

[6] The false reports crime merged with the false alarm charge for sentencing purposes.

[7] Applying the deadly weapon enhancement to the simple assault conviction, the standard range was six to seven months (plus or minus three months for the aggravated/mitigated range). Moreover, the standard range for false alarm was restorative sanctions to one month (plus or minus three months for the aggravated/mitigated range).

[8] Trial counsel filed a petition to withdraw, which was granted on February 29, 2016. New counsel was appointed to represent Figuereo on appeal.

[9] On March 1, 2016, the trial court ordered Figuereo to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Figuereo filed a concise statement two days later. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on August 3, 2016.

appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. Hoch*, 936 A.2d 515, 518 (Pa. Super. 2007) (citations and quotation marks omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011) (footnotes omitted).

Here, Figuereo filed a timely notice of appeal and included the requisite statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief. Moreover, at the January 14, 2016, proceeding, Figuereo's counsel challenged the Commonwealth's request to impose a sentence in the aggravated range. *See* N.T., 1/14/2016, at 48-50 (general challenge asking court to consider certain mitigating factors).[10] Therefore, we may proceed to determine whether Figuereo has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013).

---

[10] We note Figuereo did not file any post-sentence motions.

With respect to whether an issue presents a substantial question, we are guided by the following:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **See Commonwealth v. Paul**, 2007 PA Super 134, 925 A.2d 825 (Pa. Super. 2007). "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Griffin**, 2013 PA Super 70, 65 A.3d 932, 2013 WL 1313089, *2 (Pa. Super. filed 4/2/13) (quotation and quotation marks omitted).

**Edwards**, 71 A.3d at 330 (citation omitted). Furthermore, this Court has previously "held that a substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances." **Commonwealth v. Bowen**, 55 A.3d 1254, 1263 (Pa. Super. 2012), *appeal denied*, 64 A.3d 630 (Pa. 2013).[11]

Figuereo specifically states: "[I]t appears that the trial court took no consideration of his mental illness, and instead relied solely upon the testimony of the victim." Figuereo's Brief at 8 (record citation omitted). Figuereo concludes that his aggregate sentence "for misdemeanor offenses with no prior record[] amounts to an abuse of discretion and the sentence is

---

[11] **See also Commonwealth v. Lawrence**, 960 A.2d 473, 478 (Pa. Super. 2008) (substantial question presented with respect to "a claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guidelines") (citation omitted), *appeal denied*, 980 A.2d 606 (Pa. 2009).

manifestly excessive and contrary to the fundamental norms which underlie the Sentencing Code." *Id.* at 9. To the extent that Figuereo's argument amounts to a claim that the trial court erred by imposing an aggravated range sentence without consideration of mitigating circumstances, we find he has raised a substantial question and will proceed to an examination of his argument on appeal.[12]

The standard of review for a claim challenging a discretionary aspect of sentencing is well-established:

> Sentencing is a matter vested in the sound discretion of the judge, and will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 607 (Pa. 2009).

Moreover, pursuant to 42 Pa.C.S. § 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that

---

[12] We note that part of Figuereo's argument, in which he alleges the court relied on factors already set forth in the sentencing guidelines or double counted those factors, is waived because he did not raise it at sentencing or in a post-sentence motion. *See Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) ("To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal.") (citations omitted); *see also* Pa.R.A.P. 302(a).

is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Additionally, "the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.* The record in *toto* "must reflect the [trial] court's consideration of the facts of the crime and character of the offender." *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa. Super. 2010), *appeal denied*, 13 A.3d 475 (Pa. 2010).[13] "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert denied*, 545 U.S. 1148 (2005).

Turning to the present matter, the court indicated that it had reviewed the presentence investigation report ("PSI"). *See* Trial Court Opinion, 8/3/2016, at 2; N.T., 1/14/2016, at 18.[14] Figuereo had a prior record score

---

[13] A trial court "need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question[.]" *Crump*, 995 A.2d at 1283.

[14] We note the PSI was not included the certified record. Nevertheless, "where the sentencing court had the benefit of a presentence investigation report ('PSI'), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v.*
*(Footnote Continued Next Page)*

of zero and an offense gravity score ("OGS") of 3 for the false alarm charge, an OGS of 1 for the false reports charge, and an OGS of 3 for the simple assault charge. *See* Commonwealth's Sentencing Memorandum, 1/12/2016, Commonwealth Exhibit 1.

At the sentencing proceeding, the court heard from Ronald Thomas Colbert, a mental health professional with Correct Care Solutions at Luzerne County Correctional Facility, who has been providing counseling services to Figuereo since 2012. Colbert testified Figuereo "is on Invega Sustenna, which is an injectable antipsychotic which is injected once a month and he has additional oral medications also Invega, also antipsychotic medications on a daily basis." N.T., 1/14/2016, at 5. Colbert stated he sees a "significant reduction in [Figuereo's] delu[s]ional thinking" when Figuereo is on the medication and "[h]e is much more reality based, much more oriented to everything around him and we see an elimination of any further psychotic symptoms primarily auditory." *Id.* at 6. Lastly, Colbert stated that he believed Figuereo could be a productive member of society if he

*(Footnote Continued)* ————————

*Moury*, 992 A.2d 162, 171 (Pa. Super. 2010), *quoting* *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (internal quotations omitted). "The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted), *appeal denied*, 987 A.2d 161 (Pa. 2009).

continued to take the medication but he would still need some additional support like ongoing mental health treatment services. *Id.* at 7-8.

The court also noted that a report by Dr. Richard Fischbein had been submitted to the court in December of 2012, which indicated Figuereo suffered from a schizoaffective disorder. *Id.* at 10. Moreover, another report, in May of 2015 from the Pennsylvania Department of Human Services, noted Figuereo still had the schizoaffective disorder as well as a history of hypertension, hyperlipidemia, and primary support problems. *Id.* at 11.[15]

The court then heard from Bromiley, who testified about the effect of the assault on her:

> There was life before Kain Figuereo and there's life after. The two are not the same and never will be. In the year following the attack, I became increasingly withdrawn and fearful. I would awaken in the middle of the night due to some terrible thing had fallen on a loved one. Fortunately, my family was tolerant of my continuing phone calls to check up on them.
>
> By June, when I didn't want to leave my house even to walk to the end of our driveway to our mailbox, I realized I needed help and began treatment.
>
> I was diagnosed with post-traumatic stress disorder and placed on medications. I have continued with therapy over the course of more than three years during which time I have used several medications that caused multiple life altering side effects adding to the residual psychological effect of the attack itself.

---

[15] Figuereo also made several statements to the court regarding his medication. *Id.* at 13-14.

Part of the inability I experienced in being able to heal from this experience was a lack of resolution. I have not been able to begin a healing process because the case has persisted for over four years. From the first local hearing at the Magistrate's quarters when I became violently ill upon seeing Figuereo to the array of symptoms I suffered from his conviction.

I live with the health effects of anxiety caused by the actions of his poor choices. Following the attack in the 2011, 2012 school year along, I missed 14 days of work. I've missed multiple days of work every year since then due to doctor's appointments, anxiety and effects of medication. My family has also suffered emotionally seeing how this has affected me, as well as living in fear and frustration themselves whenever he is nearby.

Immediately after the attack, we placed our home of 18 years on the market for six months, during which time it did not sell. We are now forced once again to give up our home while he will be returning to his. Our home will remain on the market until it sells even at a financial loss because I will never be at ease with Figuereo living across the street from me. I will not be able to go home once he returns. We are currently struggling with where we will go, what we will do and how we will leave upon his release.

In addition, I have given up professional and social opportunities out of fear to go out at night. This was exacerbated when Figuereo was released for home visits and when he was exited from Clark Summit Hospital during the winter of 2014.

*Id.* at 19-21.[16]

The trial court heard from Figuereo, who alleged that Bromiley

suffered from extreme paranoia and "used her car as a weapon" against

---

[16] Bromiley gave additional testimony regarding the effect of Figuereo's actions on her and her family's life. *Id.* at 21-24.

him. *Id.* at 31.  He also claimed Bromiley was romantically obsessed with

him. *Id.* at 41.

At the conclusion of the hearing, the court set forth its rationale for the

sentence:

> As we noted, I had the opportunity to be a part of this case for many years now.  I've had the opportunity to listen to Mr. Figuereo in times of treatment while he was at Clark Summit and medication; times of nontreatment when he was released from Clark Summit.  I heard the violation of his bail in this matter.  I will note that I revoked his bail.

> Mr. Figuereo on more than one occasion went to Norristown for treatment to be restored to competency.  I have seen him, through his medication highs and lows, and quite frankly, he has been consistent with his medication for the first time in a long time most recently.

> What is most concerning today is that he is consistent with his oral medication and his injections, yet he made statements that cause me grave concern for the community where he lives, specifically that Ms. Brom[i]ley has a romantic obsession with him.

> …

> Okay.  I know you believe she does, sir, but this is with you taking all of your meds and being in the best place that you've been in a while and you're making statements that cause me to be so concerned for this community, your neighborhood.

> I will note that there was a recommendation of the prosecution in this matter for a sentence in the aggravated range and a recommendation of the victim.  I will note that [Figuereo] did not plead guilty in this case and went to a trial where testimony was specifically provided to the Court and [Figuereo] was found guilty.

> I will note that there's little remorse being shown by Mr. Figuereo today.  And I understand previously with medication lapse and competency, but at no time today did Mr. Figuereo

- 13 -

apologize to his neighbors, instead he attacked his neighbors, saying they're obsessed with him. That they did it. He called them paranoid. That causes me extreme concern.

I will note that we know Mr. Figuereo has mental health issues. We will note what happened throughout the course of those, but he lives by himself in a residence across the street from the people today he called paranoid and romantically obsessed with him.

I will note that I have concerns … as to him being a danger to society and a danger to the community. I will note that he failed while on bail because I heard the testimony and found him guilty while he was released on bail and today he tells me that Ms. Brom[i]ley followed him to Wal-Mart and was basically stalking him when I already heard the testimony and reviewed that matter and found that he had violated the terms and conditions of his bail, noting at that time he was not medicated.

I find that the guideline sentences are too lenient and clearly not appropriate in this case. I'm concerned with the fact that he possessed a weapon at the time of this offense of the simple assault and that he attempted and threatened to injure the victim. I will note that her testimony today is clear that it was an infliction of extreme mental cruelty to her which she suffers from until this day.

*Id.* at 50-53.

In the Rule 1925(a) opinion, the trial court further explained its rationale for a departure from the guidelines:

[Figuereo]'s claim is belied by the record, which reveals that the Court gave consideration to the factors listed in 42 Pa.C.S. § 9721(b) and stated the reasoning for the sentencing of [Figuereo] in the aggravated range. Specifically the sentencing court considered the PSI and the sentencing guidelines which prescribed a standard sentence and noted it for the record. The Court also considered facts underlying the offense including the impact that the assault had on the victim and the gravity of the offense as it related to her continuing to be fearful, of leaving her home and difficulty sleeping at night.

- 14 -

The Court considered all the aforementioned factors, and determined that a standard range sentence would be inconsistent with the gravity of the offense. Accordingly, the court sentenced [Figuereo] to an aggravated range due in part of the determination that [he] continues to be a danger to the community.

Trial Court Opinion, 4/3/2016, at 4-5.

Based upon our standard of review, we conclude the trial court did not abuse its discretion in sentencing Figuereo in the aggravated range. Contrary to Figuereo's argument, it is evident from the sentencing hearing and the Rule 1925(a) opinion that the court did indeed consider the required factors under Section 9721(b). Moreover, the court acknowledged its understanding of the sentencing guidelines, and did articulate a sufficient statement of reasons for sentencing Figuereo in the aggravated range.

Furthermore, the court indicated it had reviewed and relied on the PSI. *See Moury*, 992 A.2d at 171. The court also articulated its concern for the protection of the community, including the victim. The court emphasized that even though Figuereo was on medication for his mental health concerns, he denied any responsibility and placed the blame on the victim and therefore, he continued to be a danger to society. The court provided further explanation for the sentence imposed in its Rule 1925(a) opinion, and these additional comments support its decision.

Additionally, we note, and Figuereo concedes,[17] a person who is found guilty but mentally ill or who pleads guilty but mentally ill "may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense." 42 Pa.C.S. § 9727. Therefore, his argument that the court did not consider his mental illness as a mitigating factor is of no merit because the court was not required to do so. Nevertheless, as provided above, the record is replete with evidence and statements by the court that it did consider Figuereo's mental state when sentencing him. Accordingly, Figuereo has not demonstrated the trial court abused its discretion in imposing his sentence. Therefore, Figuereo's sole claim on appeal fails, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017

---

[17] Figuereo's Brief at 8.